J^EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Cora Ann Johnson and Chester McDowell, two electors of St. John the Baptist Parish, from an adverse judgment in their suit to disqualify John Crum as a candidate for district attorney of the parish. The sole allegation of their petition is that Crum is not a resident of the parish. After a trial on the merits the trial judge ruled that Crum is indeed a resident of the parish and entered judgment in his favor. This appeal followed. For the following reasons we affirm the judgment of the district court.
The recent case of Russell v. Goldsby, 2000-2595 (La.9/22/00), 780 So.2d 1048, is the latest statement on the law concerning challenges to candidacy based on residency requirements. There the court first noted that:
In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492. The laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office (at 1051, citations omitted).
There are two provisions in the law concerning the residency requirements for the office of district attorney. Article 5, sec. 26 of the Louisiana Constitution |3(1974) provides that a candidate for that office “shall have resided in the district for the two years preceding election.” Similarly, La. R.S. 16:1A states that he “shall have resided in the judicial district for the two years preceding the election.”
The record shows that Crum purchased a home at 1916 Madewood Road in La-Place in St. John Parish in the 1970’s, and began living there. In 1984 he was first elected as district attorney for the parish, a position he has since held. It was stipulated that he takes his homestead exemption on the Madewood house, maintains insurance on the property, pays for phone, cable TV, water, a security system, gas and electricity for the house, receives most of his mail there, and is registered to vote at that address. Also, all of his four automobile insurance policies list that address, and his wife and children are also listed as named insureds there.
Crum testified that in the late 1980’s his three children were attending schools in Jefferson and Orleans Parishes and that his wife would drive them to and from school. Because of the rush hour incoming and outgoing traffic she sometimes spent five or six hours on the road each day. To alleviate this problem the Crums bought a house in New Orleans in 1990. Crum said that since then he has slept in the New Orleans house on the majority of nights, but that he daily drives early in the morning to the LaPlace house. Because he is traveling opposite to the rush hour traffic, this is a relatively quick trip.
He testified that he keeps most of his clothes at Madewood, showers and dresses there, and prepares for the workday. He said that he cooks, eats, naps, and sleeps there sometimes. He introduced photographs of the interior of the house which showed that it is fully furnished, that there are closets of clothes, that the kitchen is apparently in use, and that the den is also apparently utilized on a regular basis. It was stipulated that these photographs were accurate depictions of the house on the day before trial. He indicated that he *449 does most of his banking |4business in La-Place. He said that he keeps two dogs and at least one cat in LaPlace, and feeds them daily. He noted that his wife and one remaining high school age daughter spend most of their time at the New Orleans house, but that they spend some summer and weekend time in LaPlace. He finally said that he never intended to abandon his residence on Madewood, and that when his daughter finishes high school he expects to give up the New Orleans house.
Two of Crum’s neighbors testified. One stated that he sees Crum on Madewood on an almost daily basis, and sees him feed the animals. He said that he and Crum have been friends for years and that occasionally when Crum is out of town he feeds the animals. , He said that he is often inside the Crum house and that it has always been fully furnished. The other neighbor testified that he frequently sees Crum at the house and has also known him for years on Madewood. A third witness testified that he used to be an assistant district attorney in Crum’s office and knew the Madewood house well. He said that since leaving the district attorney’s office he still sees Crum at the house on at least a monthly basis. He noted that he and Crum often exercise and jog together, and sometimes have lunch, and that on most of these occasions he meets up with Crum at the Madewood address.
Plaintiffs presented the testimony of only one witness who was acting as a private investigator. This witness testified that he had conducted surveillance on the house on five or six occasions during the last three weeks. He said that the house looked abandoned to him, that he never saw anyone there, that the lawn was unkempt, and that there was a stray dog in the back yard. A one minute videotape made in conjunction with these observations of the house was introduced. The investigator admitted that he was there only early in the morning or after dark in the evening, that he never saw the interior of the house, and that he did not inquire of the neighbors about whether Crum was often there or not. The one neighbor | ¡¡that he did speak to said that to her knowledge John Crum lived in the Made-wood house and that he was an “assistant district attorney.” This witness also indicated that based on hearsay evidence he had concluded that Crum owned a house on Fairfax street in Metairie in Jefferson Parish, but no further substantiation of this fact was presented. It appears that the owner of that house was actually another person whose name happened to be Crum, and that the defendant here had absolutely nothing to do with that property-
On the basis of the above evidence, the trial judge concluded that:
I think the evidence not only preponderates but overwhelmingly mitigates in favor of the finding that Mr. Crum was indeed a resident of the 40th Judicial District within the last two years and is therefore qualified.
He also said that he found Crum’s testimony about the time he spent at Madewood credible, especially in that it had not been impeached in any way. He further noted that this testimony also had been corroborated by the neighbors and the friend.
Plaintiffs now appeal. Plaintiffs acknowledge that the findings of fact made by the trier of fact are subject to the manifest error rule, i.e. those facts cannot be reversed by this court unless they are clearly wrong. As noted above, the law concerning residency requirements for office was most recently set forth in Russell v. Goldsby, supra. There, the pertinent statutes required that a candidate have both “actual domicile” and “actual resi *450 dence,” while here the requirement is simply “residence.” Nonetheless, in this court’s opinion the law as set forth in that case is applicable to the present matter.
The Goldsby court repeated the principle that domicile and residence are not synonymous and that while a person may have only one domicile, he may have several residences, citing La. Civ.Code, Art. 38. In summarizing the facts which it found sufficient to establish “actual residence” the court noted the following particulars. Goldsby, the candidate at issue, was found to “eat, nap and entertain” at the subject house. He also slept there occasionally, kept changes of clothes and | ^toiletry items there, claimed his homestead exemption there, received mail, and used the address on his drivers license. The court concluded that “All these factors show Dr. Golds-by has significant connections to the [pertinent] address, and that his residency at this address is real rather than fictitious.” (at 1052)
In the present case, the trial judge found Crum’s connections to the property to be more substantial than those shown in Russell v. Goldsby. We are unable to say that those findings were clearly wrong, based as they were on a reasonable view of the evidence and determinations of credibility. Crum’s unrefuted testimony about the connections he has to the LaPlace property, which connections were corroborated by neighbors, were more than legally sufficient to establish the requisite residency in St. John Parish. Moreover, even assuming that the facts of this case may have raised questions about Crum’s residence in LaPlace, the rule that the election laws should be liberally construed in favor of candidacy further supports the judgment of the trial judge. We therefore affirm that judgment.
The final issue here concerns defendant’s motion for sanctions urged in the district court. The trial judge specifically deferred ruling on this motion when judgment was entered. We therefore remand the matter to the district court for further proceedings on this outstanding issue.

AFFIRMED AND REMANDED.